IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 29 2025

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

ADAM RYAN MARTIN
AND TINA MARIE LANG,

      Plaintiffs,

v.

AUGUSTA COUNTY SHERIFF DONALD
L. SMITH, INDIVIDUALLY

      Serve:

      Augusta County Sheriff's Office
      127 Lee Highway
      Verona, Virginia 24482

AUGUSTA COUNTY DEPUTY SHERIFF
SGT. WILLIAM ANTHONY MIKOLAY,
INDIVIDUALLY

      Serve:

      Augusta County Sheriff's Office
      127 Lee Highway
      Verona, Virginia 24482

&

AUGUSTA COUNTY DEPUTY SHERIFF
MARK R. STUTES, INDIVIDUALLY

      Serve:

      Augusta County Sheriff's Office
      127 Lee Highway
      Verona, Virginia 24482

      Defendants.

Civil Action No.: 3:25CV00081
**Trial By Jury Demanded**

## COMPLAINT[1]

Plaintiffs Adam Ryan Martin and Tina Marie Lang, by counsel, hereby submit their Complaint seeking judgment against Defendants Augusta County Sheriff Donald L. Smith, individually, Augusta County Deputy Sheriff Sergeant William Anthony Mikolay, individually, and Augusta County Deputy Sheriff Mark Stutes, individually.  Plaintiffs state as follows in support of their claims:

## INTRODUCTION

This case arises from the excessive use of force by Sergeant William Mikolay and the failure of Deputy Mark Stutes to intervene.  On September 29, 2023, at the conclusion of a vehicle pursuit that ended in Albemarle County, Virginia, Sgt. Mikolay used excessive force on Plaintiff Tina Lang, a non-threatening and compliant passenger who remained seated in the vehicle with her hands raised.  Moments later, Sgt. Mikolay continued his use of excessive force by striking Plaintiff Adam Martin—who was handcuffed, seated, and entirely subdued—in the head with a hard object and inflicting significant and lasting injuries.

Deputy Stutes, who had tased and detained Martin moments earlier, stood just feet away and observed Sgt. Mikolay's actions in real time. Deputy Stutes made no attempt to intervene,

---

[1] Plaintiffs have an ongoing civil action pending in the Circuit Court for the County of Albemarle, *Martin et al. v. Mikolay et al.*, Case No. CL25-1372 (the "Albemarle Action"), asserting Virginia common law claims against Defendants Mikolay and Stutes. In the present action, Plaintiffs reassert those state-law claims and add: (1) claims under 42 U.S.C. § 1983 against Defendants Mikolay and Stutes for violations of the Fourth Amendment; (2) a § 1983 claim against Sheriff Donald L. Smith based on an unconstitutional policy, custom, or practice; and (3) vicarious liability against Sheriff Smith for the state-law claims against Defendants Mikolay and Stutes. This action is filed in good faith to preserve Plaintiffs' federal constitutional claims and related vicarious liability claims against Sheriff Smith within the applicable statutes of limitations. Plaintiffs will coordinate the proceedings to avoid duplicative litigation or inconsistent adjudications.

prevent the use of excessive force, or summon aid as Martin bled heavily from his head and drifted in and out of consciousness.

This misconduct did not occur in a vacuum. Rather, it unfolded within a department where deputies were permitted to engage in excessive use of force with impunity—emboldened by years of indifference to accountability and an entrenched culture of retaliation and tolerance for excessive force that was cultivated and condoned by Sheriff Donald L. Smith. That culture made Sgt. Mikolay's behavior not only foreseeable, but tragically predictable. It also rendered Deputy Stutes's failure to act particularly egregious.

Plaintiffs seek compensatory and punitive damages for the injuries they sustained as a result of Defendants' conduct. The facts of this case demand accountability under both the United States Constitution and Virginia law.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

2.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in the Charlottesville Division of the Western District of Virginia under 28 U.S.C. § 1391(b), because the events, acts, and/or omissions giving rise to Plaintiffs' claims occurred within the Charlottesville Division and of the United States District Court for the Western District of Virginia.

## PARTIES

4.  Plaintiff Adam Ryan Martin is resident of Virginia.

5.  Plaintiff Tina Marie Lang is a resident of Virginia.

6.      Defendant Sheriff Donald L. Smith is the elected Sheriff of Augusta County, Virginia.  He is responsible for the training and supervision of his deputies and the implementation and enforcement of use of force policies, practices, and customs.  Sheriff Smith is sued in his individual capacity.  He was acting under color of state law at all relevant times.

7.      Defendant William Anthony Mikolay is a Sergeant employed by the Augusta County Sheriff and is sued in his individual capacity.  He was acting under color state law at all relevant times.

8.      Defendant Mark Stutes is a deputy employed by the Augusta County Sheriff. Deputy Stutes and is sued in his individual capacity. He was acting under color state law at all relevant times.

## FACTS

**I.      Sgt. Mikolay Used Excessive Force against Adam Martin and Tina Lang.**

**A.      The Vehicle Pursuit**

9.      On September 29, 2023, Sgt. Mikolay and Deputy Stutes were involved in a vehicle pursuit that started in Augusta County and ended at the intersection of Dudley Mountain Road and Red Hill Road in Albemarle County, Virginia.

10.      Martin was the driver of the fleeing vehicle, and Lang was a passenger.

11.      The vehicle pursuit ended when Martin stopped the vehicle and fled into the woods off the roadway.

12.      Lang did not flee the scene but instead remained in the vehicle.

**B.      Sgt. Mikolay's Use of Excessive Force on Tina Lang**

13.      While Deputy Stutes pursued Martin into the woods on foot, Sgt. Mikolay approached the vehicle where Lang remained seated with her hands in the air.

14.     At all relevant times, Lang was not resisting, yelling, or acting belligerently. With her hands raised, she was fully submitting to law enforcement authority.

15.     Despite Lang's compliance, Sgt. Mikolay approached the vehicle in an agitated and aggressive manner.

16.     Sgt. Mikolay then took it upon himself to administer excessive force; a practice that, upon information and belief, is not uncommon among Augusta County Sheriff's Deputies.

17.     Without identifying himself or issuing any commands to Lang, Sgt. Mikolay forcibly opened her vehicle door, struck her in the face with a closed fist, pulled her from the vehicle, threw her to the ground, kicked her in the ribs, and handcuffed her.

18.     The brutal excessive use of force against Lang resulted in a black eye, fracture to her cheek, and broken ribs.

19.     The photograph below depicts the injuries to Lang's face shortly after Sgt. Mikolay's excessive use of force:



**B.    Sgt. Mikolay Uses Excessive Force on Martin while Deputy Stutes Watches**

20.    While Sgt. Mikolay was using excessive force on Lang, Deputy Stutes chased Martin into the woods on foot.

21.    Deputy Stutes discharged his Taser, striking Martin in his left hip and neck. This photograph shows a Taser probe struck Martin's back left hip:



22.    After deploying his Taser, Deputy Stutes placed Martin in handcuffs and seated him on the bank of a creek.

23.    At the time Martin was tased and subsequently handcuffed, only Martin and Deputy Stutes were present in the wooded area.

24.    After handcuffing Lang, Sgt. Mikolay left her in the custody of an assisting Albemarle County police officer and then ran into the woods with his firearm drawn.

25.    Still agitated from his earlier assault on Lang, Sgt. Mikolay shouted at Martin, "You stupid son of a b****. What the f*** were you thinking?"

26.    Then, while Martin remained handcuffed and seated on the creek bank, Sgt. Mikolay struck Martin multiple times.  At least one of Sgt. Mikolay's blows was with delivered

with significant and excessive force to the left side of Martin's head using a hard object, believed to be either a Sgt. Mikolay's flashlight or firearm.

27.    At the time of Sgt. Mikolay's excessive uses of force against Martin, Deputy Stutes was present, in close proximity to Martin and Sgt. Mikolay, and had a clear and unobstructed view of Sgt. Mikolay's actions.

28.    Deputy Stutes knew, or reasonably should have known, that Sgt. Mikolay was using excessive force against Martin, who was handcuffed, seated, and not posing a threat to officers or others. Yet, Deputy Stutes failed to intervene despite having the opportunity to do so, choosing instead to standby and do nothing.

29.    Indeed, because Martin was already handcuffed and compliant, no use of force was necessary under the circumstances at all, much less the excessive force Martin suffered at the hands of Sgt. Mikolay.

30.    After Martin was struck with the hard object, he began to lose consciousness for a brief period.

31.    Sgt. Mikolay and Deputy Stutes were nonetheless able to pull Martin to his feet.

32.    The next thing Martin remembers is blood pouring down his face and hearing Deputy Stutes tell Sgt. Mikolay, "Yeah, look out for the body cam footage."

33.    As set forth more fully below, Sheriff Smith refused for years to provide his deputies with body worn cameras. Because of Sheriff Smith's refusals, Deputy Stutes and Sgt. Mikolay did not have body worn cameras when Lang and Martin were attacked.

34.    Upon information and belief, Deputy Stutes's statement was meant as a warning to Sgt. Mikolay that law enforcement officers from Albemarle County were on scene and wearing body worn cameras.

35.     Deputy Stutes clearly was not concerned about Martin and instead focused his attention on making sure that Sgt. Mikolay did not say or do anything that could have been video recorded and later used against them.

36.     Sgt. Mikolay and Deputy Stutes then began to slowly escort Martin from the woods to the roadway as Martin struggled to maintain his balance and walk.

37.     On their way to the roadway, an Albemarle County police officer observed Martin bleeding heavily from his head and requested EMS to respond.

38.     Upon information and belief, neither Sgt. Mikolay nor Deputy Stutes called for EMS despite the fact Martin was bleeding heavily and was having trouble maintaining consciousness.

39.     Martin sustained obvious and severe head trauma at the hands of Sgt. Mikolay as depicted in the photo below:



40.    While awaiting the arrival of EMS, Martin repeatedly complained of difficulty breathing and continued to lose consciousness intermittently.

41.    EMS eventually arrived and transported Martin to the University of Virginia Medical Center where he spent three days in the hospital.  He was treated for a significant laceration to the left side of the head requiring stitches and staples to close the wound.  Martin required endotracheal intubation a blood transfusion due to the significant amount of blood loss.

42.    Since the September 29, 2023 incident through the present, Martin has experienced depression, anxiety, and nightmares about Sgt. Mikolay maliciously wounding him.  Martin is also seeking treatment for a brain injury he sustained due to Sgt. Mikolay's conduct.

## II.    Mikolay Criminal Charges

43.    Sgt. Mikolay's gross abuse of police authority and use of excessive force were investigated by the Virginia State Police and the Albemarle County Commonwealth's Attorney.

44.    As a result of those investigations, Sgt. Mikolay was arrested on November 22, 2023, and charged with felony malicious wounding of Martin in violation of Va. Code § 18.2-51 and a misdemeanor assault and battery of Lang in violation of Va. Code § 18.2-57.

45.    On February 29, 2024, both criminal charges against Sgt. Mikolay were certified to an Albemarle County grand jury following a preliminary hearing in the Albemarle County General District Court.

46.    On April 1, 2024, an Albemarle County grand jury returned true bills, indicting Sgt. Mikolay on charges of felony malicious wounding and misdemeanor assault and battery.

47.    On February 6, 2025, Sgt. Mikolay entered an *Alford* plea to the charge of assault and battery of Lang, maintaining his innocence while acknowledging that the Commonwealth had sufficient evidence to likely secure a conviction.

48.     In exchange for the *Alford* plea, the Commonwealth agreed to dismiss the malicious wounding charge.

### III.    Augusta County Sheriff Donald L. Smith Fostered a Culture of Impunity and Lawlessness that Informed Defendants' Conduct.

49.     The conduct of Sgt. Mikolay and Deputy Stutes must be viewed in the context of a department culture that normalized and failed to correct the use of excessive force.  Indeed, Sheriff Smith created a culture amongst his deputies that encouraged them to act with impunity and administer their own brand of "justice."

50.     For example, on July 27, 2020, it is believed that Deputies Jonathan Wells, Charles Taylor, Jr., Christopher Rosemeier, and Christopher Hilliard used excessive force when they arrested Marvin Harris on a warrant after a traffic stop.  The deputies reportedly tased Harris, and Deputy Hilliard punched him in the nose while he sat passively in the vehicle and then opened the passenger door. Once Harris was outside the vehicle and handcuffed and pressed against the ground, he was allegedly tased at least two more times, punched, and kicked to the point of unconsciousness.  Harris filed suit in this Court, which denied summary judgment to defendants on his Fourth Amendment claims. *See Harris v. Rosemeier*, et al., Civil Action No. 7:22-cv-582-JPJ-PMS, ECF No. 92.

51.     On August 31, 2022, Deputy Taylor reportedly was involved in another excessive force incident while on duty in the City of Staunton, when he approached two civilians, Antwhon Suiter, the president of the Shenandoah Valley chapter of Black Lives Matter, and Christopher Shifflett, a police auditor, who were lawfully recording a traffic stop with their cell phones.

52.     It has been alleged that Deputy Taylor aggressively confronted the civilians, grabbed Shifflett's wrist, slammed him to the ground, applied pressure while falsely claiming

resistance, and forcibly struck Shifflett's phone out of his hand, breaking the screen. Deputy Taylor also reportedly seized Suiter's phone forcibly during the encounter.

53.    Despite these documented uses of excessive force and violations of the First and Fourth Amendments, Sheriff Smith, upon information and belief, failed to terminate or meaningfully discipline Deputy Taylor at least with respect to the Antwhon Suiter incident, instead placing him on administrative leave for over two years following the incident, and continuing to employ Deputy Taylor even after he was convicted in Staunton County General District Court on two Class 1 misdemeanor charges and fined $2,000 for his actions.

54.    In what may have been one of the most infamous days in ACSO history, Deputy Taylor was convicted in the Antwhon Suiter matter in the general district court on February 29, 2024 which was the same day Sgt. Mikolay's charges were certified to the Albemarle County grand jury. Deputy Taylor subsequently appealed his convictions and, on October 10, 2024, entered *Alford* pleas to the charges of assault and battery in Staunton County Circuit Court. *See Commonwealth v. Taylor*, Case Nos. CR24-54-01, CR-24-54-02 (Staunton Cir. Ct.); *Suiter v. Taylor*, Civil Action No. 5:23-cv-00062-JHY-JCH at ECF No. 56-1; 68 at p. 5. Yet, upon information and belief, Sheriff Smith continued to retain Deputy Taylor, demonstrating a deliberate choice to tolerate and ratify unconstitutional conduct by ACSO deputies.

55.    Deputy Taylor is now the subject of an ongoing lawsuit in which this Court has found, at the pleading stage, that Antwhon Suiter sufficiently alleged Deputy Taylor violated his Fourth Amendment rights. *See Suiter v. Taylor*, Civil Action No. 5:23-cv-00062-JHY-JCH.

56.    On December 9, 2023, in yet another display of excessive force by an Augusta County deputy, ACSO Deputy Andrew Simonetti arrived at a medical call in Verona involving a reportedly intoxicated and belligerent individual, Frank Allen Schulpman, who had allegedly been

swinging at rescue personnel. Upon arrival, Deputy Simonetti immediately exited his vehicle and tackled Schulpman to the ground without warning, an act captured on video and described by a witness as "unnecessary."

57.    With respect to Sgt. Mikolay, it has been reported by the Augusta Free Press that an internal email to ACSO employees, stated, "I support Sgt. Mikolay 110%, and want out office to stick together throughout this difficult situation," explicitly expressing personal support for Mikolay and his version of events while the criminal case was pending, signaling to ACSO deputies that unlawful conduct would be endorsed and supported by the Sheriff regardless of the law.

58.    Sheriff Smith's pattern of inaction and affirmative support of deputies who engaged in or were charged with acts of excessive force reflect an official custom of ratifying and condoning unconstitutional uses of force by ACSO deputies, effectively communicating that such conduct will not result in meaningful discipline and will instead be protected and supported.

59.    Additionally, upon information and belief, Sheriff Smith actively resisted the implementation of body-worn cameras and dash cameras for ACSO deputies for years, despite repeated public outcry following multiple officer-involved shootings in 2021, including one that resulted in the death of a man in Grottoes and another involving a suspect shot multiple times in Stuarts Draft.  Sheriff Smith repeatedly deprioritized the acquisition of cameras, citing other budget preferences, thereby maintaining an environment that lacked accountability and transparency and enabling deputies to engage in excessive force without oversight.

60.    Finally, after public pressure, Sheriff Smith relented in 2024 and the Augusta County Board of Supervisor approved funding for body worn cameras.  Yet, it was not until April 2025 that ACSO implemented body-worn cameras.  This was done well after the incidents

involving Deputies Taylor, Simonetti, and Sgt. Mikolay, further illustrating Sheriff Smith's deliberate indifference to the need for accountability mechanisms to prevent the ongoing pattern of excessive force by ACSO deputies.

61.     Sheriff Smith's lack of leadership created an environment that allowed the brutal beatings of Lang and Martin to occur.

62.     Indeed, through his actions and omissions, Sheriff Smith maintained a de facto policy of ratifying and encouraging the use of excessive force by ACSO deputies.

63.     The above incidents illustrate that excessive force by ACSO deputies was not an aberration.  The sustained pattern of violence, the absence of meaningful discipline, and the lack of body-worn cameras created an environment where deputies acted without fear of accountability. These circumstances make Sgt. Mikolay's use of excessive force against Lang and Martin especially egregious and underscore the inadequate response of Deputy Stutes, who stood by and allowed the assault if Martin to occur despite the department's known pattern of misconduct.

64.     Further, Sheriff Smith's policies, customs, and deliberate indifference to the need for supervision, discipline, and accountability were the moving force behind the constitutional violations suffered by Plaintiff, proximately causing Plaintiff's injuries and damages.

## COUNT I
### 42 U.S.C. § 1983 – Fourth Amendment – Excessive Force
### Plaintiff Lang against Defendant Mikolay

65.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

66.     On September 29, 2023, Plaintiff Tina Lang remained seated in the passenger seat of the vehicle at the conclusion of the pursuit with her hands raised in surrender and fully compliant with police authority.

67.     Despite her lack of resistance or threat, Sgt. Mikolay forcibly opened the passenger door, struck Lang in the face with a closed fist, pulled her from the vehicle, threw her to the ground, and kicked her in the ribs before handcuffing her.

68.     These uses of force were objectively unreasonable, unnecessary to accomplish any lawful purpose, and undertaken maliciously and sadistically to cause harm in violation of the Fourth Amendment to the United States Constitution.

69.     As a direct and proximate result of Sgt. Mikolay's conduct, Lang suffered serious physical injuries, including a fractured cheekbone, broken ribs, facial bruising, pain, and emotional distress.

70.     Sgt. Mikolay's actions violated Lang's clearly established right under the Fourth Amendment to be free from the use of excessive force.

71.     Sgt. Mikolay's violations of the Fourth Amendment establish a cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory and punitive damages, attorneys' fee, and costs.

## COUNT II
### 42 U.S.C. § 1983 – Fourth Amendment – Excessive Force
### Plaintiff Martin Against Defendant Mikolay

72.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

73.     On September 29, 2023, Plaintiff Adam Martin was subdued, handcuffed, and seated on the bank of a creek under the custody of Deputy Stutes.

74.     Once handcuffed, Martin was not resisting, threatening officers, and did not pose a danger to himself or others once handcuffed.

75.     Despite this, Sgt. Mikolay, came from nowhere in an agitated and punitive manner, struck Martin multiple times, including a forceful blow to the left side of his head with a hard object, believed to be a flashlight or firearm.

76.     As a direct and proximate result of Sgt. Mikolay's objectively unreasonable use of force, Martin to bled profusely, lost consciousness, and suffered severe injuries, including a head laceration requiring stitches and staples, blood loss necessitating transfusion, hospitalization, intubation, and ongoing treatment for traumatic brain injury.

77.     These uses of force were objectively unreasonable under the circumstances and violated Martin's clearly established right under the Fourth Amendment to be free from excessive force.

78.     Sgt. Mikolay's violations of the Fourth Amendment establish a cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory and punitive damages, attorneys' fee, and costs.

**COUNT III**
**42 U.S.C. § 1983 – Fourth Amendment – Bystander Liability/Failure to Intervene**
**Plaintiff Martin Against Defendant Stutes**

79.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

80.     On September 29, 2023, Plaintiff Adam Martin was tased by Deputy Stutes, handcuffed, and seated on the bank of a creek. At that point Martin was fully subdued, compliant, and did not pose a threat to officers or others.

81.     Sgt. Mikolay arrived shortly thereafter and, in an agitated and punitive manner, struck Martin multiple times, including a blow to the head with a hard object, while Martin remained handcuffed and defenseless.

15

82.     Deputy Stutes was present, in close proximity, and had an unobstructed view of Mikolay's assault.

83.     Deputy Stutes knew, or reasonably should have known, that Mikolay's use of force was objectively unreasonable and unlawful under the circumstances.

84.     Moreover, based on his experience as a deputy in the Augusta County Sheriff's Office, and in light of the department's well-documented history of deputies engaging in unjustified uses of force without accountability—including incidents involving Deputies Wells, Hilliard, and Taylor—Deputy Stutes was on heightened notice of the real and substantial risk that Sgt. Mikolay would employ excessive and unconstitutional force.

85.     Despite having both actual knowledge of Sgt. Mikolay's conduct and constructive knowledge of the pattern of unjustified force within the department, Deputy Stutes failed to take any reasonable steps to intervene, prevent, or mitigate Sgt. Mikolay's unlawful assault.

86.     By failing to act, Deputy Stutes violated Martin's clearly established Fourth Amendment right to be free from excessive force.

87.     Deputy Stutes's inaction was willful, wanton, malicious, and in reckless disregard of Martin's constitutional rights.

88.     As a direct and proximate result, Martin sustained severe physical injuries, emotional distress, and ongoing damages.

89.     Deputy Stutes's violations of the Fourth Amendment establish a cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory and punitive damages, attorneys' fee, and costs.

## COUNT IV
### 42 U.S.C. § 1983 – Fourth Amendment – Unconstitutional Policy, Custom, and Practice
### Plaintiffs Against Sheriff Smith

90.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

91.     At all relevant times, Sheriff Donald L. Smith was the elected Sheriff of Augusta County and final policymaker for the Augusta County Sheriff's Office ("ACSO").

92.     Sheriff Smith created, maintained, and perpetuated policies, customs, and practices that permitted, condoned, and ratified the use of excessive force by ACSO deputies, including Defendants Mikolay and Stutes.

93.     Sheriff Smith deliberately failed to implement adequate supervision, discipline, or accountability mechanisms for deputies who engaged in unlawful uses of force, thereby encouraging and emboldening a culture of impunity within the ACSO.

94.     The unconstitutional policies, customs, and practices of the ACSO are illustrated by multiple documented instances of deputies engaging in excessive force without meaningful discipline, including:

a. The Harris Incident (July 27, 2020): Deputies Jonathan Wells, Charles Taylor, Jr., Christopher Rosemeier, and Christopher Hilliard allegedly used excessive force when arresting Marvin Harris after a traffic stop. Harris was allegedly tased, punched in the nose while seated passively in the vehicle, dragged out, and—after being handcuffed and pressed against the ground—tased multiple additional times, punched, and kicked until unconscious. Harris filed suit in this Court, which denied summary judgment to the deputies on his Fourth Amendment claims. *See Harris v. Rosemeier, et al., Civil Action No. 7:22-cv-582-JPJ-PMS, ECF No. 92.*

b. Deputy Taylor Incident (August 31, 2022): Deputy Charles Taylor allegedly assaulted civilians lawfully recording police activity, slamming one to the ground and seizing phones, yet it is believed that Sheriff Smith retained him on paid leave even after criminal convictions.

c. Deputy Simonetti Incident (December 9, 2023): Deputy Andrew Simonetti tackled an individual without warning at a medical call, captured on video as unnecessary, yet its believed he received only a brief paid leave with no meaningful discipline.

d. Sheriff's Support of Mikolay: During Mikolay's criminal proceedings for assaulting Plaintiffs, Sheriff Smith sent an internal email pledging his "110%" support for Mikolay, signaling to deputies that excessive force would be defended and endorsed regardless of legality.

e. Refusal to Implement Cameras: Sheriff Smith resisted the use of body-worn and dash cameras for years, despite public pressure after multiple shootings, thereby ensuring deputies operated without oversight or accountability until well after Plaintiffs' assaults. These incidents and omissions demonstrate a consistent pattern and practice of tolerating and ratifying excessive force, creating an environment where deputies reasonably believed they could act with impunity.

95.    Sheriff Smith knew, or reasonably should have known, that his policies, customs, and practices created a substantial risk that ACSO deputies—including Mikolay and Stutes— would engage in excessive and unconstitutional force.

96.    Sheriff Smith acted with deliberate indifference to the constitutional rights of civilians, including Plaintiffs, by tolerating, endorsing, and failing to correct a pattern of unjustified uses of force.

97. The unconstitutional policies, customs, and practices maintained by Sheriff Smith were the moving force behind the Fourth Amendment violations suffered by Plaintiffs Lang and Martin. Accordingly, Sheriff Smith's actions and/or inactions establish a cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory and punitive damages, attorneys' fee, and costs.

## COUNT V
**Battery**
**Plaintiff Lang Against Defendant Mikolay and Sheriff Smith**

98. Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

99. On September 29, 2023, Plaintiff Lang was seated in a vehicle with her hands visibly raised, fully compliant and posing no threat to law enforcement.

100. Without warning, command, or legal justification, Defendant Sgt. Mikolay forcibly opened the car door, punched Lang in the face, dragged her from the vehicle, threw her to the ground, kicked her in the ribs, and then handcuffed her.

101. The physical force used by Sgt. Mikolay was intentional, harmful, and offensive, and was not in furtherance of any lawful arrest, self-defense, or exigent circumstance.

102. At all relevant times, Lang was compliant and non-threatening. The use of force was excessive, unjustified, and punitive in nature.

103. As a direct and proximate result of the battery, Lang sustained serious injuries, including a black eye, facial fracture, broken ribs, and associated pain and suffering.

104. Lang also experienced emotional trauma, humiliation, and distress as a result of being physically assaulted while fully compliant.

105.    Sgt. Mikolay's conduct was willful, wanton, and undertaken with conscious disregard for Lang's rights and bodily integrity, entitling Plaintiff to an award of punitive damages in addition to compensatory damages.

106.    Under Virginia law, Sheriff Smith is vicariously liable for the tortious acts of his deputies and, accordingly, is liable for Sgt. Mikolay's battery of Lang.

### COUNT VI
### Battery
### Plaintiff Martin Against Defendant Mikolay and Sheriff Smith

107.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

108.    On September 29, 2023, Defendant Sgt. William Mikolay, while acting under color of his authority as a law enforcement officer, intentionally and without legal justification struck Plaintiff Adam Martin multiple times while Martin was handcuffed, seated, and not posing any threat to anyone.

109.    At least one of Sgt. Mikolay's blows was delivered with a hard object—believed to be either a flashlight or firearm—to the left side of Martin's head, causing a deep laceration and head trauma.

110.    Sgt. Mikolay's use of physical force against Martin was intentional, harmful, and offensive, and was not undertaken in furtherance of any lawful arrest or self-defense.

111.    At no time did Martin threaten or resist Sgt. Mikolay. The use of force was clearly punitive, retaliatory, and excessive under the circumstances.

112.    As a direct and proximate result of Sgt. Mikolay's actions, Martin sustained serious physical injuries including head trauma, loss of consciousness, bleeding requiring staples and stitches, and required hospitalization and a blood transfusion.

113.    Martin also continues to suffer from emotional distress, anxiety, nightmares, and cognitive impairment resulting from the battery.

114.    The conduct of Sgt. Mikolay was willful, wanton, and undertaken with a conscious disregard for Martin's rights and safety, entitling Plaintiff to an award of punitive damages in addition to compensatory damages.

115.    Under Virginia law, Sheriff Smith is vicariously liable for the tortious acts of his deputies and, accordingly, is liable for Sgt. Mikolay's battery of Martin.

**COUNT VII**
**Gross Negligence**
**Plaintiff Lang Against Defendant Mikolay and Sheriff Smith**

116.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

117.    Defendant Sgt. William Mikolay had a duty to use reasonable care and employ only reasonable measures in his interactions with Plaintiff Martin.

118.    Further, under Va. Code § 19.2-83.5, Sgt. Mikolay had duties to not use deadly force unless he reasonably believed it to be necessary to avert serious bodily injury or death, had issued a warning if feasible, acted reasonably, and had exhausted non-deadly alternatives.

119.    In violation of his legal duties, Mikolay acted in a reckless and grossly negligent manner that resulted in the serious injury to Martin.

120.    On September 29, 2023, Plaintiff Lang was seated inside a vehicle with her hands raised in full compliance with law enforcement. She was unarmed, non-resistant, and posed no threat to anyone.

121.    Despite her compliance, Defendant Sgt. William Mikolay approached Lang's vehicle, forcibly opened the door, punched her in the face, dragged her from the vehicle, threw her to the ground, kicked her in the ribs, and then handcuffed her.

122.    Sgt. Mikolay knew or should have known his conduct would place Lang in imminent danger of serious bodily harm.

123.    Sgt. Mikolay's actions were not only unnecessary and excessive—they were a clear violation of Va. Code § 19.2-83.5— and reflected a wanton disregard for Lang's rights, safety, and physical well-being.

124.    This conduct constitutes gross negligence under Virginia law in that it represents such an extreme and marked departure from the ordinary standard of care as to demonstrate a complete and utter disregard for the safety of others.

125.    As a direct and proximate result of Sgt. Mikolay's grossly negligent conduct, Lang suffered physical injuries including a black eye, fractured cheekbone, and broken ribs, as well as substantial pain, suffering, and emotional distress.

126.    Sgt. Mikolay's conduct was so egregious, punitive, and unjustifiable under the circumstances as to support an award of punitive damages in addition to compensatory damages.

127.    Under Virginia law, Sheriff Smith is vicariously liable for the tortious acts of his deputies and, accordingly, is liable for Sgt. Mikolay's gross negligence.

## COUNT VIII
### Gross Negligence
### Plaintiff Martin Against Defendant Mikolay and Sheriff Smith

128.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

129.     Defendant Sgt. William Mikolay had a duty to use reasonable care and employ only reasonable measures in his interactions with Plaintiff Martin.

130.     Further, under Va. Code § 19.2-83.5, Sgt. Mikolay had duties not to use deadly force unless he reasonably believed it to be necessary to avert serious bodily injury or death, had issued a warning if feasible, acted reasonably, and had exhausted non-deadly alternatives.

131.     In violation of his legal duties, Mikolay acted in a reckless and grossly negligent manner that resulted in the serious injuries to Martin.

132.     On September 29, 2023, after Plaintiff Martin had been tased, handcuffed, and was seated on the bank of a creek, fully subdued and compliant, Sgt. Mikolay approached Martin and inflicted multiple blows to Martin, including at least one strike to Martin's head with a hard object believed to be a flashlight or firearm.

133.     Sgt. Mikolay's conduct was a clear violation of Va. Code § 19.2-83.5 and went far beyond ordinary negligence. Sgt. Mikolay's actions constituted a shocking and deliberate disregard for Martin's rights and safety, and were so grossly negligent as to evince a total lack of concern for the foreseeable harm to Martin.

134.     Sgt. Mikolay knew or should have known his conduct would place Martin in imminent danger of serious bodily harm.

135.     As a direct and proximate result of Sgt. Mikolay's gross negligence, Martin suffered a serious head injury, including a laceration requiring staples and stitches, substantial blood loss requiring transfusion, hospitalization, and endotracheal intubation.

136.     Martin also endured pain, emotional distress, cognitive symptoms consistent with a brain injury, and continues to suffer from nightmares, anxiety, and psychological trauma.

137.    The force used by Sgt. Mikolay under these circumstances—where Martin was handcuffed, injured, and compliant—was such an utter disregard of prudence amounting to a complete neglect for the care and/or safety of Martin as to constitute gross negligence under Virginia law.

138.    Sgt. Mikolay's conduct demonstrates such an extreme departure from the standard of care owed to a restrained individual as to support an award of punitive damages in addition to compensatory damages.

139.    Under Virginia law, Sheriff Smith is vicariously liable for the tortious acts of his deputies and, accordingly, is liable for Sgt. Mikolay's gross negligence.

## COUNT IX
### Gross Negligence
### Plaintiff Martin Against Defendant Stutes and Sheriff Smith

140.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

141.    Defendant Deputy Mark Stutes had a duty to use reasonable care and employ only reasonable measures in his interactions with Plaintiff Martin.

142.    Virginia Code § 19.2-83.6 imposes a duty on law enforcement officers, such as Deputy Stutes, to intervene in the use of excessive force:

> A. Any law-enforcement officer who, while in the performance of his official duties, witnesses another law-enforcement officer engaging or attempting to engage in the use of excessive force against another person **shall intervene**, when such intervention is feasible, to end the use of excessive force or attempted use of excessive force, or to prevent the further use of excessive force. A law-enforcement officer shall also render aid, as circumstances reasonably permit, to any person injured as the result of the use of excessive force.

Va. Code Ann. § 19.2-83.6 (emphasis added).

143.    In violation of his legal duties, Deputy Stutes acted in a reckless and grossly negligent manner that resulted in serious injuries to Martin.

144.    On September 29, 2023, after Plaintiff Martin had been tased and handcuffed by Deputy Stutes, he was seated on the ground near a creek and was no longer resisting or posing any threat.

145.    While Martin remained handcuffed and compliant, Defendant Sgt. William Mikolay approached and, without justification, struck Martin multiple times, including at least one blow to the left side of the head with a hard object—believed to be a flashlight or firearm—causing significant injury.

146.    At the time of the assault, Defendant Stutes was present, in close proximity, and had a clear and unobstructed view of Sgt. Mikolay's actions.

147.    Deputy Stutes knew, or in the exercise of slight diligence should have known, that Sgt. Mikolay was using, or going to use, excessive and unjustifiable force on a defenseless, restrained individual.

148.    Despite having the ability and duty to intervene and prevent or mitigate the unlawful use of force, Deputy Stutes did nothing. His total inaction in the face of obvious and foreseeable harm constituted gross negligence.

149.    Deputy Stutes's failure to intervene reflects such an extreme degree of indifference to the safety and rights of Martin as to demonstrate a complete disregard for basic law enforcement standards.  The foreseeability of such conduct, combined with Deputy Stutes's clear opportunity to prevent it, renders his failure to intervene grossly negligent.

150.    As a direct and proximate result of Deputy Stutes's grossly negligent inaction, Martin suffered severe physical injuries, including head trauma, significant blood loss, and hospitalization, as well as ongoing psychological and emotional harm.

151.    Deputy Stutes's conscious failure to act in the face of known, preventable harm supports an award of punitive damages under Virginia law in addition to compensatory damages.

152.    Under Virginia law, Sheriff Smith is vicariously liable for the tortious acts of his deputies and, accordingly, is liable for Deputy Stutes's gross negligence.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs each respectfully request that this Honorable Court enter judgment in their favor against each of the Defendants, jointly and severally, in the amount of THREE MILLION U.S. DOLLARS ($3,000,000.00) to each Plaintiff, or in such greater amount to be determined at trial, costs, pre-judgment interest, post-judgment interest, punitive damages in the amount of THREE HUNDRED FIFTY THOUSAND U.S. DOLLARS ($350,000.00) as to each individual Defendant as to each Plaintiff, attorney's fees, and such other and further relief that this Honorable Court may deem just and appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted this 29th day of September, 2025,

ADAM RYAN MARTIN
AND TINA MARIE LANG

By:        /s/ M. Scott Fisher, Jr.

M. Scott Fisher, Jr. (VSB No. 78485)
Clinton W. Verity (VSB No. 75535)
FRIEDMAN FISHER VERITY, PLLC
125 S. 14th Street, Suite 120
Richmond, VA 23219

26

Phone: (804) 602-7388
Fax:    (804) 602-7768
Email: sfisher@ffvlaw.com
        cverity@ffvlaw.com
*Counsel for Plaintiffs*